The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Eugene G. Daugherty presiding. Good morning. The court is calling The City of Springfield, Illinois v. Metropolitan Commercial Bank, case number 4-24-0674. I will begin this morning by asking counsel to state your name, starting with counsel for the appellant. Good morning, Your Honor. Kelly Schneid on behalf of the Defendant Appellant, Metropolitan Commercial Bank. And for the appellee? Katia McMasters for the City of Springfield, Your Honor. All right. The appellant may proceed. Good morning, Your Honors. Defendant Appellant, Metropolitan Commercial Bank submits that the trial court erred when granting plaintiff Appellee City of Springfield's motion for summary judgment and issuing a decision in order of demolition with respect to 5 of 24 specific buildings on the property located at 700 Bronze Lane, Springfield, Illinois, which is owned by Defendant Old Town Apartments Owner, LLC, and in which Metropolitan Commercial Bank maintains an interest as a lien holder, holding an $8 million mortgage and an additional $1 million line of credit. The property overall consists of 23 buildings and one clubhouse. Section 11-31-1 of the Illinois Municipal Code provides that the corporate authorities of each municipality may demolish, repair, or enclose, or cause the demolition, repair, or enclosure of dangerous and unsafe buildings or uncompleted and abandoned buildings within the territory of the municipality. The corporate authorities shall apply to the circuit court of the county in which the building is located for an order authorizing such relief. Thus, pursuant to the code and case law applying the code, a municipality has a two-pronged burden to secure an order of demolition. First, the municipality must demonstrate that each of the buildings in which it seeks to demolish is dangerous and unsafe, and the municipality must further demonstrate that each of the buildings which it seeks to demolish is beyond substantial repair based on a comparison of the cost of repair to the value of each building. That's pursuant to County of McHenry v. Smith, 2nd District, 2015. The property may be ordered destroyed under certain conditions, but only if the danger cannot be evaded in any other way. The statute in providing for repair or demolition in the alternative contemplates repair whenever feasible, as stated in City of Aurora v. Meyer, Supreme Court of Illinois, 1967. Defendant Appellant Metropolitan Commercial Bank demonstrated at both the trial level and our appellate submissions three points. First, that Plaintiff Appellee, City of Springfield, failed to prove that each of the five buildings it seeks to demolish cannot be reasonably repaired to secure the relief requested on summary judgment. Second, Defendant Appellant Metropolitan Commercial Bank created a material issue of fact as to whether each of the five buildings can be reasonably repaired, thereby precluding summary judgment. And third, Plaintiff Appellee, City of Springfield, failed to prove each of the five structures are dangerous and unsafe. Counsel, isn't there another element in the law, though, that there's a temporal element? If it just isn't being repaired, even if it's theoretically reasonably repairable, that doesn't mean we wait indefinitely for it to be repaired. Your Honor, there's nothing in the statute that provides any temporal limit. The temporal limit is only with respect to the notice requirements. Moreover, if there was a temporal limit, plaintiff certainly didn't need its burden of establishing that that period had expired. In fact, there's nothing in the order of demolition that suggests that that was a basis for the court's decision. When I say temporal, I don't mean that there's some deadline. What I mean is it's fine for a building to be subject to repair, but if it isn't being repaired, that's a problem. I understand that, Your Honor, but we're effectively talking about a property taken here. And it wasn't like the court directed the property owner or the bank to make the repairs. The statute specifically provides that the court can issue an order to make a repair or to enclose the property. They didn't have to issue an order to demolish the property. It would be one thing if the court said that the property owner or the bank or any of the lien holders had an obligation to make a repair or to enclose a dangerous condition. That's not what happened here. So when we look at the first point, plaintiff failed to prove that the structures cannot be reasonably repaired. And in fact, the only evidence provided by the city is a three-page affidavit of Mitchell Flynn, a building inspector. And that three-page affidavit was insufficient to establish that the cost of repairs were $2.6 million as alleged, and that the value of the property as a whole was $5.25 million as a whole. And you can see the affidavit for yourself, Volume 1, C113-115, because it's a very quick read. And in that read, it's very clear that Mr. Flynn, while he may be a certified building inspector, does not have any qualifications to weigh upon the cost of repairs or the valuation of the buildings. Looking at his very brief resume, from 2022 to present, he was a certified building inspector. From 2004 to present, he was a residential inspector. 2003 to 2001, a building inspector for the city of Macomb. And 1996 to 2003, he was a carpenter. There is not an iota of evidence in his affidavit to suggest that he has any training, any experience, or any prior history of responsibilities to weigh in on the cost of repairs, provide cost estimates, or appraise property. And in fact, even though he might have been a building inspector for about two years before this court issued the decision, and he was a residential inspector for several years before that, we have no idea what his day-to-day responsibilities were. I have no idea if he's ever issued any kind of a finding on the cost of repairs or valuation of properties, or if he has any experience or training whatsoever in any of those areas. And he says in his affidavit, it's entirely conclusive. In 2003, he says based upon, quote, training and experience, end quote, he estimates $2.65 million worth of repairs and says that that is simply, quote, not economically feasible. There's no evidence to support that. And then he says he provides an unsupported conclusory breakdown of this $2.65 million to allocate those repair costs to each of the five buildings which the city seeks to destroy. He says that $625,000 would be the cost to repair each of the two buildings at issue, $530,000 to repair one of the buildings, $460,000 to repair a fourth building, and $425,000 to repair the final and fifth building. But we have no idea whatsoever how he came up with any of this information, what it contemplates. Is he providing repair costs for a luxury renovation or an affordable renovation? There's no breakdown of what this even consists of. I submit that plaintiffs simply did not meet its burden under any shred of evidence by solely submitting the affidavit of Mitchell Flynn. While the city would have this court believe in its papers that an expert affidavit is not required to secure the relief that it has been requesting, the bank wholeheartedly agrees with that. An expert affidavit is not required. But that does not obviate the city from meeting its burden, which is to provide substantial, credible evidence before seeking a demolition order. And it relies on the City of Granite City v. House of Prayers, a 5th District 2002 case. But that reliance is entirely misplaced. In Granite City, before issuing an order of demolition, the court held an entire trial with testimony from a building and zoning administrator with 50 years of experience, a municipalities building inspector, a licensed general contractor who bid on making the repairs, a property owner's president who testified about the repair costs estimated by an architectural consultant, and also obtained a construction estimate and remodeling plans from an architect. There's no expert in that case, that's true. But it wasn't simply a conclusory three-page affidavit from a building inspector who failed to demonstrate he has any knowledge, experience, or training to make the determinations that he did. And if you look at other case law cited in the bank's papers, for instance, Village of Ringwood v. Foster, 2nd District 2010, the court held a bench trial with testimony before issuing an order of demolition and considered testimony from two insurance adjusters, the village's president, the village's building commissioner, the village's retained general contractor, architectural draftsman, home inspector, and appraiser, the village's retained real estate appraiser, the property owner, the property owner's home contractor, the property owner's brother, who was a self-employed contractor, and the property owner's structural engineer. There's not, of course, a specific formula of the evidence that must be presented to secure relief under the governing code, but it is crystal clear that the city did not meet its burden in this case. The plaintiff and the court further relied on irrelevant and inadmissible data and incorrect methodologies to conclude that the five specific structures at issue could not be reasonably prepared. The Capital Township Assessor's Assessment Calculation Report cannot be— I want to interrupt just for a second. Yes, Your Honor. Is the bank conceding the dangerous and safety issue here? Because it doesn't seem like your affidavits really address the condition of the buildings. No, Your Honor, we're not conceding it. And I can jump ahead to my third point, if Your Honor would prefer. It's the plaintiff's burden in this case, the city's burden, to demonstrate that the structures are dangerous and unsafe. The three-page Flynn affidavit does not demonstrate that. And the case law cited by plaintiffs is entirely inapplicable and confirms that the city must provide more to demonstrate that the structures are dangerous and unsafe under the law, right? Dangerous and unsafe to secure relief under this particular code. If the court looks at City of Aurora v. Meyer, Supreme Court of Illinois 1967, the court distinctly reversed an order of demolition where the evidence related to the cost of repairs was excluded. And there, before issuing an order of demolition weighing in on the dangerous and safety conditions, the court heard testimony from the mayor, the structural engineer, the building inspector, the fire inspector, the general contractor, right? The plaintiff would have this court look to the case of Village of Lake Villa v. Stockville, Supreme Court of Illinois 2004. But there, too, the court reversed an order of demolition. And the court stated that the plaintiff's municipality is the one that bears the burden of coming forth with sufficient evidence to support each of the findings necessary for an order of demolition. And they failed to meet that burden in that case. And similarly, the other case that the plaintiff relies upon, McKeldin v. City of St. Charles, 2nd District 2015, that wasn't a situation where the city was even seeking an order of demolition. In that case, the property owner sued the city for invading its property when the city attempted to replace its unique route with a traditional route based on safety concerns. So, no, the bank is not conceding that the structures are dangerous and unsafe, but it is not the bank's burden in this case. It's the city that bears any kind of burden when seeking such aggressive relief under Section 11-31-1. Turning back to my point that the city failed to meet its burden to demonstrate that the structures cannot be reasonably repaired, I started to discuss how plaintiff and the court erroneously relied on irrelevant and admissible data and incorrect methodologies to determine that the structures could not be reasonably repaired. The Capital Township Assessor's Assessment Calculation Report cannot be used to determine the fair market value of the property as a whole, let alone each of the specific five structures at issue. The Assessment Calculation Report lists the fair market value of the entire property as about $5.27 million. But plaintiff fails to provide any foundation about this ACR report. There is no indication that's an appropriate tool for estimating the fair market value, and it's ultimately inadmissible. There's no information about where it was obtained, how it was obtained, who prepared it, where the information in it came from, or if it's a public records exception to hearsay or some other exception that would render it appropriate for the court to consider it summary judgment. Plaintiff then submits that it is, quote, reasonable to infer that the values established by the Capital Township Assessor are primarily based upon the Arms Lane sale that occurred on or about November 2nd, 2020. First of all, it's not the court's job to make a reasonable inference on summary judgment. Second of all, the sale, the Arms Lane sale that the plaintiff is referencing, is the sale of the property to defendant in this case, and that was in the midst of COVID. So it's not an appropriate indicator of the fair market value today. The Capital Township Assessor's assessment calculation report also cannot be used to determine the fair market value of each of the five structures. Now, as mentioned, the report lists the fair market value of the entire property as a whole at $5.27 million, and the city states that, quote, extrapolating the data from the Capital Township Assessor, based upon the size listed for each building in that report, the fair market value of the structures is between $1.27 million and $1.3 million. But a guess or an extrapolation does not satisfy the plaintiff's affirmative burden to secure an order of demolition. Moreover, it is inappropriate to extrapolate a building-by-building evaluation based solely on the size of the building if the plaintiff has no actual evidence that that's an appropriate indicator to value the building. The value could be based on so many other factors aside from the square footage of the building. It could be based on the number of units in the building, the condition of the building, the proximity to parking, the proximity to exits, the proximity of the clubhouse on the property. And in fact, the court didn't issue any ruling on a structure-by-structure basis or a building-by-building basis regarding the repair costs and value, and therefore it had no basis to come up with an order of demolition as a whole. The court further incorrectly held that the structures cannot be reasonably repaired based on the cost to perform necessary repairs as compared with pre-renovation values. Now, the case law is very clear that the court should have considered post-renovation values. If the court looks at County of McHenry v. Smith, 2nd District, 2015, the court affirmed the denial of an order of demolition and found that the county failed to provide that it would not be economically feasible to repair the property. The court stated, quote, there was no evidence of what the property would be after it was repaired. Plaintiff's argument focuses solely on the estimated cost of repair relevant to the then-current value of the building. However, the court correctly noted that if the repairs increased the value of the property sufficiently, rehabilitation would be feasible, and plaintiff presented no evidence of what the property's value would be if it were rehabilitated, end quote. And therefore, the court's methodology to do a cost-benefit analysis of the repair costs compared to the value of the property was misguided as it used that incorrect consideration. Moving to my second point. Can I ask you, Counsel, to address? You raised a pleading issue that affirmative defenses were not responded to. Were they responded to with a motion, and was that motion heard? No, Your Honor. So, was the failure to file a response raised before the trial court? A failure to file a response to the affirmative defense was raised by defendants?  No, Your Honor. There wasn't a counterclaim in this case. That precluded a finding on the papers at the summary judgment level. Would you repeat your answer? Because you kind of broke up a little bit there. Yes, Your Honor. Sorry. No problem. Simply that we asserted our defenses. There was no motion based on those defenses, but it's our position that between those defenses and the plaintiff's failure to meet its burden on summary judgment, that summary judgment was inappropriate in all the defenses, and the case should have proceeded past summary judgment to discovery and trial. I thought you were suggesting that the defenses were admitted because of a failure to reply. That wasn't previously brief, so I'm not going to make that argument for the first time before, Your Honor. So, the bank further submits that it presented competing affidavits, which prevented the court from issuing summary judgment, and demonstrated at a bare minimum that there's a genuine issue of material fact as to whether the structures could be reasonably repaired. First, the bank presented an affidavit from John Macris, who is an expert in the real estate valuation field. He is distinctly qualified to render the opinions that he did render. He has 25 years of experience as a certified real estate appraiser in Illinois, an MAI designation from the Appraisal Institute, a member of the Royal Institution of Chartered Surveyors, certified commercial investment member, and he's also the Senior Managing Director for Newmark Valuation and Advisory, and a market leader. Counselor, let me interrupt for a moment. In regard to your affidavits, is there anything in this case that refutes the conditions that were found to be dangerous? Forgetting for a moment whether they can be repaired, I want to know if this building inspector found that these conditions were not appropriate for a building, and that there were concerns with its structure, with mold, etc. There are photos of that. That is part of the evidence in the case. I don't see anywhere where that's refuted. Your Honor, we're not disputing that the properties are in disrepair. We have disputed that plaintiff has met its burden to show that the photos and all of that was admissible. There's no evidence of where they came from and from an evidentiary perspective. We're not disputing that there are defects with respect to the properties. Does that answer your question, Your Honor? Yes. When we look at the Makris affidavit, he's the senior managing director for Newmark Valuation, a market leader for the state. He provides in his 200-page report from Volume 2, C305-505, that he's prepared valuations and market analysis on apartment complexes, mixed-use developments, and vacant land. His appraisal further includes risk factors, market transfers, the methodology to value the property. It's a very in-depth report. And he determines in that report that the fair market value of the property is $10 million. He further provides that the ACR relied upon by plaintiff is not accurate to value the properties, and plaintiff doesn't dispute that. Mr. Makris further testified that Flynn's valuations were depressed valuations. And again, plaintiff does not rebut that proposition. I understand Your Honor's point that there are, in fact, defects with the property, and the bank may not be disputing that, but the reality is, is that in order to make use of the relief under the specific statute, it's simply more than showing that there's, you know, dangerous and unsafe conditions, which we maintain they did not meet their burden to establish. There might be defects in the property, but it doesn't mean that they've demonstrated that it's dangerous and unsafe under the law. We also look to the James Napoli affidavit. It's an affidavit by a professional engineer. Counsel, I think you're out of time at this point. I'm sorry, Your Honor. I didn't see the clock.  That's okay. All right. Thank you. Counsel for the appellee. Thank you, Your Honor, and good morning. May it please the court opposing counsel. Just to kind of jump into the two prongs that opposing counsel mentioned, I do want to touch on the dangerous and unsafe aspect that has been mentioned. No, I wholly concur that there has been no direct evidence refuting what has been presented by the city. Mr. Flynn in his affidavit stated that he personally inspected the property and the photographs submitted were taken during his inspections. So there is no question and it is undisputed that these structures are gutted to the studs. They contain mold. There's water in the basements. There's missing floors. There are foundational issues. There are exterior wall structural issues. In line with all of the case law surrounding municipal demolitions, it is unquestionable that these conditions are not mere technical violations. They are dangerous and unsafe conditions, and there is no genuine issue of material fact that these buildings are dangerous and unsafe. The bulk of opposing counsel's argument appears to be with respect to the second prong and whether the structures are beyond reasonable repair. Justice Daugherty, you touched on this temporal element, and that is the city's primary argument. There are lines of cases which suggest that the direct cost comparison value is not always necessary. The Village of Gurnee out of the 2nd District and the City of Chicago case out of the 1st District, there was no evidence presented in either of those cases with respect to the exact cost of repair or the exact valuation of the property. Those courts' holdings turned on the fact that there was 4 years and 10 months in those cases respectively that had elapsed with no attempt to repair those structures whatsoever. There are 2 additional cases... Would that be different from this case because there were repair efforts, although deemed by the city to be inadequate? I don't think those cases would be different. Even though the city admits that there were some attempts at repair, they weren't significant attempts to repair. Again, those photographs demonstrate that there is a long way to go to bring these structures back into habitability. Is that an appropriate issue to resolve on summary judgment, whether there have been adequate attempts to repair the property? It seems as though that's something on which there might be competing inferences. Different eyes may view it differently. I believe that it is an issue that's appropriate for summary judgment. Again, the evidence that was presented and based upon when the plaintiff, when the owners, the defendant owners, took ownership of the property, that they were aware that these properties needed repaired. This case was filed... It was mid-2022, so now at this point we're approaching 2 years since the case was filed. That's undisputed facts. Again, the photographic evidence, it's undisputed that when anybody, even a reasonable juror, would look at these photographs, can see how much work is needed with respect to these properties. Isn't it a little more mathematical than that, that you have to determine the cost of the repairs and the cost of the property after the repairs and make the judgment about whether the repairs are sensible to make? I think that there is a line of cases that supports that, yes. But again, I think there's a line of cases that supports the opposite. Again, the two cases that I previously mentioned, there was no evidence presented with respect to those numbers. And then there were two cases out of the 5th District, the City of Alton and the City of Granite City, where yes, those numbers were presented, but the court's holdings in both of those cases did not focus on those numbers. The court's holdings in those 5th District cases, again, focused on the fact that 4 years had elapsed, and there was no evidence that any significant repairs in both of those cases over the course of 4 years had been made. And I think that these cases are in line with the holdings of City of Aurora and Stokovitch. In the City of Aurora, the court has specifically held that should the court find from the evidence what specific defects render the building dangerous and unsafe, if they are such that may be readily repaired, demolition should not be ordered without giving the owners a reasonable opportunity to repair. And again, 3 plus years, 3 going on 4 years now, is more than a reasonable opportunity to repair. You understand, though, that reasonableness is typically not something we decide at summary judgment? I understand that that's typically the case, Your Honor, but again, I think that the overwhelming evidence in this case would make it appropriate when we're talking about 3 going on 4 years with the overwhelming evidence of the uncompleted, substantially uncompleted repairs that are now abandoned, and no one is taking any efforts, even the opposing party and opposing counsel have stated that they have no intent to repair. The owners have no intent to repair as they have not participated in these proceedings at all. And defendant Metropolitan's pleadings admitted that they have no intent to repair. They've admitted that it's their intent to foreclose and sell it off to the highest bidder in the hopes that said bidder will complete the repairs. Again, I think that this is in line with the Supreme Court's ruling in Stokovitch 2, where they said that demolition is justified only if repair makes so little economic sense that it is unlikely an owner would make any further opportunity to repair. And that's exactly what's going on in this case. Regardless of the numbers, the owners have not made any further opportunity to make the repairs such that demolition in this case is not only justified, but appropriate. Just so we can understand, we got two different evaluations of the feasibility of repairs here. And it's possible that creates a genuine issue of material fact on that, but are you saying that doesn't matter because of the lack of effort to make the repairs? I wouldn't say that it doesn't matter. I think that under either approach, whether you look at the actual cost comparison approach or this reasonable opportunity to repair, that the city has met its burden. With respect to the specific numbers and the evaluation that you're referencing, the defendant's appraisal of $10 million, I do not believe, and Judge Perrin in the trial court's ruling in its order stated that that appraisal was not genuine. This property was purchased by the current owners in 2020 at a national auction for only $5.2 million. Case law specifically has held- The council, it was purchased in a state of disrepair, correct? Correct, Your Honor. And the valuation given was a valuation as of the repairs having been made, correct? Yes, but again, those repairs are not significant. And it's also unclear that- No, no, no. You're missing my question. It may be worth $5 million in disrepair, but their point is it would be worth $10 million if it were repaired, and that that's the relevant question here in assessing whether the repairs would be reasonable. Your Honor, I believe that the evidence that was presented was that the $10 million is what it is currently worth and that the appraiser estimated it would be worth $18 million if repaired. But again, I would submit that neither of those numbers is genuine, particularly with respect to the current value. It is absolutely nonsensical that the value of the property would have doubled over the course of three years when the repairs have not been completed, particularly with respect to these buildings. It is very obvious that the repairs to these buildings have not been completed. The $10 million, there's no way that it is worth $10 million over the course of three years. In addition, the repairs- You understand that sounds like weighing evidence. It sounds like we don't find that evidence credible, and those are things we just don't do on summary judgment. Again, I feel that the facts in this case are so obvious that summary judgment could be granted on these issues. You know the standard, right? I mean, we don't weigh evidence. Say if somebody's credible, if there's conflicting evidence, that creates an issue of fact on a material issue, summary judgment denied. Summary judgment isn't a tool by which you can win because you have a really, really strong case. You've got to have no opposition on the issues in which you need to prevail. I do understand that, Your Honor, and the only true opposition in this case appears to be the valuation of the property, the 5.2 versus the $10 million. And again, I believe that the $10 million is very much not genuine. Appraisals are only an estimate of what the property could be worth. The city has submitted evidence of an actual sale, a recent sale that is $5.2 million. That is very strong evidence of what the actual value of the property is. But you don't lose at summary judgment if your evidence is weak. You lose at summary judgment because you don't have any evidence. I understand, Your Honor. Again, even if we use the actual cost comparison, when you look at the city's numbers of the entire property being worth $5.2 million and the estimated cost of repairs being $2.6 million, that is not economically feasible. And that is what the trial court held and the city agrees with. We believe we met our burden in the trial court's ruling was appropriate in this respect. Thank you.  Moving on to a couple of other issues. Council, before you move on, I haven't addressed this, but I'm going to ask opposing counsel in her rebuttal. There's an issue regarding the notice given in this case. And my question on the notice is, why did the bank receive a different notice than what was sent to the owner of the property? I can opine on that, but I don't know that there was any evidence specifically presented on that in the briefings, Your Honor. So I don't know that I would feel comfortable stating things that are not supported by the record. Okay.  One of the other issues that was raised in the opening statements was with respect to the affirmative defenses. I believe that in the trial court level, those issues were addressed. They were raised by defendant metropolitan in their response to the city's motion for summary judgment. And the city in turn responded in its reply to that response. And it was also mentioned in the briefs. While there was no explicit ruling on these matters, we believe that the court's granting of the summary judgment was essentially a de facto ruling. And those affirmative defenses are so insufficient on their face that they should entirely be disregarded. And that the de facto ruling was that they were inappropriate and that summary judgment was appropriate. And I believe for now that that concludes the city's argument, unless the court has any further questions for myself. Thank you, counsel. And back to you, Ms. Schneider. Thank you, Your Honors. The standard is that the city has an affirmative burden to demonstrate that each building that it seeks to demolish is beyond substantial repair based on the comparison of the cost of the repair with the value of the property. Now, the post-renovation value of the property, as we discussed and saw in County of McHenry versus Smith. Ms. McMaster stated that cost analysis isn't necessarily required, and she referred the court to City of Granite City versus House of Prayers, which Your Honors may recall I relied upon in my moving argument. But in City of Granite City, the court distinctly said that cost analysis was a part of its decision. And in fact, the court looked at the defendant's estimated $42,000 worth of repairs and compared that against the $14,000 market value of the property. So it's not accurate for Ms. McMaster in the city to say that cost analysis isn't necessarily required. And in fact, the very concept that Ms. McMaster acknowledged, there's a line of cases confirming that this is a mathematical consideration to determine whether the repair costs compared with the value of the property warrant demolition or do not warrant demolition, confirms that there is case law out there that this is an important consideration by the court, and it shouldn't have been disregarded by the lower court. In fact, that was reversible error. In terms of the property value, it's our position that plaintiff has failed to meet its burden by solely relying on the assessment report, which I've already attacked on my moving arguments, as well as in my moving submissions. But Ms. McMaster's statement that it's, quote, nonsensical that the value of the property would increase over three years, even though there hadn't been any change to the property, is based on her opinion and her opinion alone. The fact is, is that the bank provided a 200-page report by someone whose sole job it is to value properties, and he determined that the initial value of the property was incorrect. The fact that someone may have gotten a steal on a property and paid below-market value during COVID is not necessarily indicative of today's property value. That's how the property market works. But valuation all stems from arm's-length transactions, and an evaluation for the subject property that was reached by two contracting parties is probably the strongest evidence of value there can be. Now, you can certainly knock it down and say, well, that was at a different market, but it has to be looked at as something of a presumptive value. I agree that an arm's-length transaction is relevant when valuing a property, but the market has dramatically changed. That's why we come up with fair market valuations. A COVID valuation is not the same as a valuation in today's market. Ultimately, the city maintains that they had overwhelming evidence to demonstrate the property value. They had overwhelming evidence of the cost analysis, and that's just not entirely accurate. It's a three-page affidavit from Flynn, and as Your Honor correctly pointed out, there are issues of fact here. If the city is going to prevail, they should do so after calling all of their witnesses and meeting their burden, because before the city takes away someone's property and doesn't direct them to make a repair, before they fully take someone's private property, there should be a full evidentiary hearing, and it's our position that they have not met their burden in this case. Counsel, summary judgment is available for these matters. Just as a personal injury case is normally going to be one that requires a trial, summary judgment happens. It can happen in any civil case. Yes, Your Honor, I don't disagree with that at all. It's our position, though, that plaintiff has not met its burden to secure summary judgment for order of a demolition, in particular, not order of repair, which is what the courts distinctly prefer and the case law confirms, that they did not meet their burden solely by presenting a three-page affidavit by Mitchell Flynn, who has no... Why would they go to an order of repair when you've said you don't intend to repair it? I don't believe that that's accurate or conformed by the record, but it's one thing to secure an order of repair and then find that someone didn't comply with it. It's very different to say that I'm taking your property and demolishing it as a whole based on an affidavit by somebody who has no experience on property valuation or repair estimates. His affidavit simply just says, I believe that the cost of repairs will be $2.6 million. There's no explanation whatsoever for how he came up with that valuation, simply none. And it's the plaintiff's burden, the city's burden to demonstrate the cost of repairs reasonably outweigh the valuation of the property. And they simply have not met that burden of care. All right. Thank you, counsel. Thanks to both counsel for your arguments. Court will now stand in recess and take this matter under advisement.